## Case No. 6,483.

### In re HILL.

[2 Ben. 349;[1] 1 N. B. R. 431 (Quarto, 114); 1 Am. Law T. Rep. Bankr. 56.]

District Court, S. D. New York.    April 9, 1868.

FRAUD—BANKRUPT DOING BUSINESS IN HIS WIFE'S NAME.

A bankrupt had married in 1860, his wife having then no property, and having inherited none subsequently, and received none except from her husband. In 1861, he failed in business, and from that time did business as agent, first for one M., and then for his wife, in whose name he transacted an extensive business: *Held* that on the facts, a house and lot which stood in the name of the bankrupt's wife, was really his property; that he had been guilty of fraud in placing his property in his wife's hands, and had willfully sworn falsely in the bankruptcy proceedings; and that a discharge must be refused.

[Cited in Re Rainsford, Case No. 11,537; Re Antisdel, Id. 490.]

[In bankruptcy. In the matter of William D. Hill.]

[In Case No. 6,482 the court had given leave to the creditor to file amended specifications giving the grounds of his opposition to the discharge of the said bankrupt, and in Case No. 6,481 certain preliminary objections to the first meeting of creditors were passed upon.]

Cooke & Lounsbery, for bankrupt.
William Lawton, for creditor.

BLATCHFORD, District Judge. The discharge of the bankrupt is opposed by William S. Preston, a creditor. The specifications in opposition, filed by the creditor [Case No. 6,482], aver that "the evidence taken before the register shows, beyond all reasonable doubt, that the bankrupt has willfully omitted from his sworn and filed schedules and inventories, property which, in truth and fact, belonged to him at the time of making and filing his said schedule and inventories, to wit, a certain house and lot, situate in the village of Kingston, claimed to have been purchased by his wife of Jeremiah Russell, a certain promissory note, made by one McKinstry, for $1,000, one of Jeremiah Green, one of H. S. Van Etten, and other notes, in addition to bonds, mortgages, and other evidences of debt and property, which will more fully appear from the evidence taken; that the said bankrupt, with intent to defraud his creditors, has fraudulently placed his property in the hands of his wife, with intent to prevent it from being reached by his creditors, and applied in satisfaction of their debts, and that his wife so held his property at the time of filing the petition aforesaid; that the said bankrupt has withheld his books, papers, and documents, relating to his business; that he has omitted from his

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

schedules all claims and demands which he has against his wife, for services rendered for her as her agent, if, in fact, he was such agent, and which, in equity, belong to the creditors, and are unpaid for."

The bankrupt and his wife, and other witnesses, have been examined. I have carefully gone over their testimony, and am entirely satisfied that the allegations of the specifications above referred to, are fully proved. The case is one of a deliberate attempt, by the bankrupt, to defraud his creditors, and yet procure a discharge from his debts. He has willfully sworn falsely in his affidavit annexed to his inventory of property, and, on his examination before the register, in the course of the proceedings in bankruptcy, in regard to material facts concerning the property owned by him at the time of filing his petition in bankruptcy, he has concealed his property by covering it up in the name of his wife, and has been guilty of fraud, contrary to the bankruptcy act [of 1867 (14 Stat. 517)], by not delivering to his assignee property which belonged to him at the time of presenting his petition and inventory, and which he was not permitted to retain under the provisions of the act, and has made a fraudulent gift or transfer of property to his wife, contrary to the provisions of the act. He has committed all these offences, which are made grounds, by section 29 of the act, for withholding his discharge, and then he has crowned the whole by taking and subscribing the oath required by section.29, to the effect that he has not done, suffered, or been privy to, any act, matter, or thing, specified in the act, as a ground for withholding his discharge.

In his inventory of his estate, annexed to his petition, he sets forth that he has no property except $200 worth of property, that is exempted by section 14 of the act; and his assignee makes a return of no assets. The evidence shows that the bankrupt claims to have done business for several years past as agent for other persons, and not on his own behalf, first, as agent for one McMullen, and afterward, and down to the time of filing his petition, as agent of, and in behalf of, his wife. The testimony, and particularly the examination of the bankrupt and of his wife, shows that these pretended agencies, and especially the one for his wife, were mere shams and covers for fraud. The prevarications of the bankrupt in his testimony, his reluctance to disclose the truth, his want of recollection as to matters which he could not well have forgotten, and his failure to give any satisfactory explanation of the terms of his agencies, and of the nature and amount of his compensation as agent, all tend to show, beyond question, that the whole arrangement was one devised and carried out to defraud his creditors, and that the bulk of the property which stood in the name of, and was in the possession of, his wife, at the time his petition was filed, was, in fact, his

own property. The attempt to show that his wife derived the property from any other source than from him, utterly failed. The debts set forth in his schedule were, all of them, contracted in 1861. He was married in 1860. His wife had then no property, except some household furniture, of the value of $225, which he purchased and gave to her before their marriage. She has inherited no property since, nor received any from any other person than her husband. In September, 1861, he failed, and made an assignment of all his property for the benefit of his creditors. Since that time he has carried on business as agent for McMullen and for his wife. His wife's furniture was sold in 1864 for $600. The attempt to show that Mrs. Hill had capital enough growing out of the investment of this $600, and the buying of notes on her behalf, prior to the 18th of April, 1867, and the transactions on her behalf with John Grant, in regard to mules, prior to that time, to establish the extensive business which, from and after that date, was done for her by her husband as her agent, is absurd. At that date a bank account was opened in her name with the Ulster County National Bank at Kingston, and her husband's agency for McMullen ceased about the same time. It is quite clear that the capital was really the property of her husband, and was the fruit of the business he had been transacting since he failed in 1861, nominally as agent for McMullen, but really on his own behalf. Mrs. Hill, in her testimony, shows that she knew nothing about what her husband was doing in her name in the way of business, and that she had no connection with it except to sign notes and checks as he brought them to her, filled up and ready to be signed. From April, 1867, to January, 1868, the deposits in the name of Mrs. Hill, in the bank, amounted to nearly $25,000; and Hill testifies that a large amount of her transactions do not appear upon her bank book, that some of the notes he bought for her were discounted at other banks, and that he bought about $50,000 worth of notes, as her agent, and dealt largely in other things as her agent, buying and selling mostly for cash. The house named in the specifications was purchased from Jeremiah Russell for $5,750, in the fall of 1866. Of this amount, $1,750 was paid in cash, being raised on a note signed by Mrs. Hill, and she took a deed of the house, and gave back a mortgage on it for $4,000. But the evidence as to the transaction shows that the purchase was really by her husband, and that the note on which the money was raised to make the cash payment, was paid with his money, if it has been paid. The bankrupt has kept no account of his dealings for his wife, as her agent, and has never rendered to her any account, and she has never paid him, or agreed to pay him, any thing for his services. The case is a plain one for refusing a discharge.